# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| JEROME LEMON, | : | PRISONER HABEAS CORPUS |
| Petitioner, | : | 28 U.S.C. § 2254 |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:11-CV-0933-JEC-GGB |
| MARTY ALLEN, Warden, | : | |
| Respondent. | : | |

## FINAL REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner Jerome LeMon seeks via 28 U.S.C. § 2254 to challenge the constitutionality of his September 21, 2006, convictions in the Cobb County Superior Court of armed robbery and aggravated assault. Presently before me are the petition [Doc. 1], Respondent Warden Marty Allen's answer-response with supporting brief and exhibits [Docs. 3 and 4], and Petitioner's reply [Doc. 5]. For the reasons discussed below, I recommend that the petition be dismissed.

# I. Background

## A. Procedural History

Petitioner was convicted on September 21, 2006, following a jury trial in the Cobb County Superior Court of two counts of armed robbery and two counts of aggravated assault. [Doc. 4, Resp. Attach. 3 at 19]. The trial court sentenced Petitioner to a twenty year "split" sentence, with ten years to serve in prison and the balance to be served on probation. [Doc. 4, Resp. Attach. 3 at 17].

Petitioner appealed his convictions and sentence to the Georgia Court of Appeals, raising the following grounds for relief:

1. Petitioner is entitled to a new trial because the state exercised its peremptory strikes in a racially discriminatory manner prohibited under *Batson v. Kentucky*, 476 U.S. 79 (1986);

2. the trial court erred when it failed to respond specifically to a question from the jury suggesting that there were three rather than four elements of the crime of armed robbery;

3. the trial court erred when it failed to charge the jury on the affirmative defense of self-defense (or justification);

4. the trial court erred when it described simple assault as well as aggravated assault in its charge to the jury; and

5. the trial court erred when it allowed a police officer to testify that immediately after a crime, persons at the scene often leave out details when they describe the incident.

[Doc. 4, Resp. Attach. 10 at 85].  The Georgia Court of Appeals found Petitioner's

claims to be without merit and affirmed Petitioner's Cobb County convictions and

sentence on March 3, 2008.  [Doc. 4, Resp. Attach. 11 at 33-41]; *LeMon v. State*, 660

S.E.2d 11 (Ga. Ct. App. 2008).

On May 29, 2009, Petitioner, through counsel, filed a state habeas corpus

petition in the Washington County Superior Court, raising the following grounds for

relief:

1. Trial counsel was ineffective in failing to properly present a defense at trial that was consistent with the evidence trial counsel presented.  The evidence presented at trial supported the defense of self-defense.  Appellate counsel was ineffective for failing to raise this issue in the motion for new trial and on appeal.

2. Trial counsel was ineffective for failing to request, after raising a *Batson* challenge during voir dire, that the trial court require the prosecutor to disclose the race neutral reasons for dismissing African American jurors during the trial process.  Appellate counsel was ineffective for failing to challenge this issue in the motion for new trial and on appeal.

3. Trial counsel was ineffective for failing to request that the jury be charged with lesser included offenses, including, but not limited to robbery by intimidation, theft by taking, assault, and terroristic threats.  Appellate counsel was ineffective for failing to raise this issue at the motion for new trial and on appeal.

4. Trial counsel was ineffective for failing to ask that Petitioner be punished for the misdemeanor offense of interfering with calls for

3

emergency assistance according to the rule of lenity. Appellate counsel was ineffective for failing to raise this issue at the motion for new trial and on appeal.

5. Petitioner's sentence to a ten-year mandatory minimum constitutes cruel and unusual punishment under the circumstances and violates Petitioner's Eighth Amendment rights. Trial counsel was ineffective for failing to raise this issue at sentencing, and appellate counsel was ineffective for failing to raise this issue at the motion for new trial and on appeal.

[Doc. 4, Resp. Attach. 1 at 8-9]. The state habeas corpus court conducted an evidentiary hearing on October 29, 2009, and denied relief by written order on July 23, 2010. [Doc. 4, Resp. Attach. 12]. On March 7, 2011, the Georgia Supreme Court denied Petitioner's application for a certificate of probable cause to appeal the denial of state habeas corpus relief. [Doc. 4, Resp. Attach. 13].

On March 23, 2011, Petitioner, through counsel, filed a federal habeas corpus petition. [Doc. 1]. In his petition, Petitioner raises the following issues:

1. whether the state habeas corpus court committed a federal constitutional error in ruling that *Batson* does not require that race-neutral reasons for striking potential jurors be placed on the record at the time of the *Batson* challenge; that the trial court did not err in placing those reasons on the record four months later at a motion for new trial hearing; and that counsel was not ineffective for failing to challenge these issues at trial and on appeal;

4

2.     whether an admission of possessing a weapon and threatening to use that weapon is enough to require a charge of self-defense and whether the state habeas corpus court erred in ruling that counsel was not ineffective in failing to raise this issue at trial and on appeal; and

3.     whether the habeas corpus court erred in finding that the rule of lenity did not apply where the factual circumstances would fit both armed robbery and interfering with calls for emergency assistance and that counsel was ineffective in failing to raise this issue at trial and on appeal.

[Doc. 1].

B.  <u>Factual Background</u>

The Georgia Court of Appeals made the following findings of fact, which are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1):

[T]he record shows that LeMon went with some friends to a party in April 2006. LeMon filmed women at the party with a hand-held video camera and asked them questions such as when they last had sex. The host later told one of the friends, M.C., that LeMon was behaving obnoxiously and needed to leave. LeMon, M.C., and one other man, P.K., left together in a car, with P.K. driving, LeMon riding in the front passenger seat, and M.C. riding in the back seat. Other friends left at the same time, following them in another car.

As they drove on the highway, LeMon became agitated and argumentative, yelling at P.K. and grabbing his face. M.C. told LeMon that he was going to call 911, but LeMon ordered him to turn over his cell phone. When M.C. refused, LeMon told him that he had a knife in his pocket, that he would "stab [him] in the heart right now," and that he had "a clear shot to [his] heart." LeMon then pulled a knife out of his

5

pocket and again demanded M.C.'s cell phone. When M.C. complied, LeMon threw the phone down on the floor of the car, pointed the knife at P.K., and demanded his cell phone as well, which P.K. surrendered. LeMon then grabbed M.C.'s shirt.

In the struggle that ensued, M.C. punched LeMon in the face and kicked him. When P.K. stopped the car along the side of the highway, M.C. jumped out, ran back to the second car, and used a different cell phone to call 911. P.K. also abandoned the car, taking the car keys with him, and got into the second car. LeMon was sitting near the first car when the police arrived. The knife he had used to threaten the victims was in his pocket when he was taken into custody. LeMon was later convicted of two counts of aggravated assault as well as two counts of armed robbery. His motion for new trial was denied.

*LeMon*, 660 S.E.2d at 13.

II. Discussion

A. Standard of Review

Under Title 28 U.S.C. § 2254, a federal court may issue a writ of habeas corpus on behalf of a person being held in custody pursuant to a judgment of a state court if that person is held in violation of his rights under federal law. 28 U.S.C. § 2254(a). This power, however, is limited. A federal court may not grant habeas corpus relief for claims previously adjudicated on the merits by a state court unless the state court adjudication resulted in a decision that (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the

6

Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court analyzed how courts should apply § 2254(d). First, the court evaluating a habeas petition under § 2254(d)(1) must determine the applicable "clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* at 404-05; *see* 28 U.S.C. § 2254(d)(1).

Next, the federal habeas court must ascertain whether the state court decision is "contrary to" that clearly established federal law by determining if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court reached a result different from the Supreme Court on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 412-13. A state court decision is "contrary to" federal law when it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Id.* at 405.

If the federal habeas court determines that the state court decision is not contrary to clearly established federal law, the federal court must then determine whether the state court decision was an "unreasonable application" of clearly

7

established federal law by determining whether the state court identified the correct governing legal principle from the Supreme Court's decisions, but unreasonably applied that principle to the facts of the petitioner's case. *Id.* at 412. This reasonableness determination is objective, and the federal court may not issue a writ of habeas corpus simply because it concludes in its independent judgment that the state court was erroneous or incorrect. *Id.* at 411. In other words, it matters not that the state court's application of clearly established federal law was incorrect, so long as that misapplication was objectively reasonable. *Id.*; *see McIntyre v. Williams*, 216 F.3d 1254, 1257 n.4 (11th Cir. 2000).

Under Title 28 U.S.C. § 2254(e), the state court's determinations of factual issues are presumed correct unless the petitioner presents clear and convincing evidence that the state court determinations were erroneous. I have reviewed the pleadings and exhibits and find that the record contains sufficient facts upon which the issues may be properly resolved. As Petitioner has made no showing as required by 28 U.S.C. § 2254(e)(2), no federal evidentiary hearing is permitted, and the case is now ready for disposition.

B. <u>Grounds For Relief</u>

1. <u>Ground One</u>

In Ground One, Petitioner contends that the state habeas corpus court committed federal constitutional error in its rulings (1) that *Batson* does not require that race-neutral reasons for striking potential jurors be placed on the record at the time of the *Batson* challenge; (2) that the trial court did not err in placing those reasons on the record four months later at a motion for new trial hearing; and (3) that counsel was not ineffective for failing to challenge these issues at trial and on appeal.

Respondent argues that Petitioner cannot obtain federal habeas corpus relief for an alleged constitutional error in the state habeas corpus proceedings. I agree. Federal habeas corpus relief is not available to correct the alleged errors in Petitioner's state habeas corpus proceedings. *See Quince v. Crosby*, 360 F.3d 1259, 1261-1262 (11th Cir. 2004) (holding that "an alleged defect in a collateral proceeding does not state a basis for habeas relief"); *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997) ("infirmities in state habeas proceedings do not constitute grounds for relief in federal court."); *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995) ("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention

9

and not the detention itself.") (internal quotation marks omitted). Thus, to the extent

that Petitioner is raising error in his state habeas corpus proceedings, his claims fail.

a. *Batson* claim

With regard to the underlying claims raised in Ground One, *Batson v.*

*Kentucky*, 476 U.S. 79 (1986) provides a three-step process for a trial court to use in

adjudicating a claim that a peremptory challenge was based on race:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Miller-El v. Cockrell*, 537 U.S. 322, 328-329 (2003) (citations omitted).

The Georgia Court of Appeals considered Petitioner's *Batson* claim, and found

the following:

> LeMon first argues that he is entitled to a new trial because the state exercised its peremptory strikes in a racially discriminatory manner prohibited under *Batson v. Kentucky*. We disagree.

> The evaluation of a *Batson* challenge involves a three-step process: (1) the opponent of a peremptory challenge must make a prima facie showing of racial discrimination; (2) the proponent of the strike must then provide a race-neutral explanation for the strike; and (3) the court must decide whether the opponent of the strike has proven discriminatory intent.

10

The ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike. The trial court's findings as to whether the opponent of the strike has met the burden of persuasion are entitled to great deference and will be affirmed unless clearly erroneous.

Although voir dire was not recorded in this case, the parties stipulated afterward that of the forty-two prospective jurors in the venire, five were African-American. Two of these were dismissed for cause. The state used three of its nine peremptory challenges to strike all three remaining African-American prospective jurors. When LeMon objected, the trial court commented that it "[did not] think [that the state's use of strikes was] systematic" and ruled that LeMon had not made out a prima facie case of discrimination.

(a) At both the conclusion of jury selection and the hearing on his motion for new trial, LeMon's objection was based only on "the raw number of strikes used." LeMon argues that the use of three out of nine strikes (33 percent) against African-Americans from a venire of forty-two, including five African-Americans (12 percent), is a "total or seriously disproportionate exclusion" sufficient to make out a prima facie case of discrimination. Pretermitting whether the 21-point differential between the percentage of African-Americans in the venire and the percentage of state's strikes used against African-Americans was sufficient on its own to make out a prima facie case, we conclude that under the circumstances here, where the state's strikes resulted in the total exclusion of African-Americans from the jury, LeMon made out a case of prima facie discrimination. The trial court erred when it ruled to the contrary.

(b) At the hearing on LeMon's motion for new trial, the state offered race-neutral explanations of its strikes of the three remaining African-American prospective jurors. The prosecuting attorney testified that he struck the first prospective juror because she had children and

11

grandchildren close in age to LeMon and because her responses to questions in voir dire suggested that she was biased toward him. The second prospective juror was struck based on her belief that drinking alcohol was morally wrong (suggesting that she might be prejudiced against the victims, who had been drinking at the party) and because her uncle had been convicted of armed robbery. The third prospective juror was struck because she expressed lingering resentment against the police in connection with her arrest for driving without a license.

"Unless a discriminatory intent is inherent in the proponent's explanation, the reason offered will be deemed race[-]neutral." A juror's family member's prior conviction or arrest history provides the state with a sufficiently race-neutral explanation for a peremptory strike. Defense counsel could not show that these explanations were pretextual because no transcript of voir dire was available. In the absence of such a transcript, we cannot say that the trial court's denial of LeMon's *Batson* motion was clearly erroneous as to any of these three prospective jurors.

*LeMon*, 660 S.E.2d at 13-15 (citations omitted).

The conclusion of the Georgia Court of Appeals as to the challenged *Batson* ruling was not based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[s]." 28 U.S.C. § 2254(d)(2). As noted above, the appellate court found that the trial court erred when it ruled that Petitioner did not make out a prima facie case when all African-American jurors were excluded from the final petit jury. However, the appellate court cited to the race-neutral reasons given by the prosecution at the motion for new trial to find in effect

12

that Petitioner was not prejudiced by the trial court error. Petitioner has pointed to no evidence in the record to suggest purposeful discrimination in connection with the dismissal of the three prospective jurors in question.

Further, the Georgia Court of Appeals' decision was not contrary to and did not involve "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Georgia Court of Appeals properly identified and applied the three-step procedure for analyzing a *Batson* challenge. Petitioner has not alleged that the appellate court's application of *Batson* was unreasonable. Accordingly, Petitioner is not entitled to relief on the underlying *Batson* claim in Ground One.

Petitioner argues that the trial court erred in not requiring the prosecution to provide a race-neutral explanation for the strikes at the time of the objection rather than later at the motion for new trial.[1] Although the Georgia Court of Appeals found that the trial court had erred when it ruled that Petitioner had not made out a case of prima facie discrimination, it found in effect that the error was harmless because the

---

[1] At the motion for new trial hearing, Petitioner argued that the trial court erred in holding that Petitioner had not made out a prima facie case of race discrimination at trial. In response to the argument, the state offered race-neutral reasons for its strikes "for purposes of the record" and because the prosecutor took offense to the argument that his strikes were racially motivated. [Doc. 4, Attach. 9 at 24-30].

state had offered race-neutral explanations for its strikes at the motion for new trial hearing. Petitioner has not directed me to any authority, and I am unaware of any, that establishes that his constitutional rights were violated by the trial court's failure to require that the race-neutral reasons for the strikes be put on the record at the time of the trial. In fact, *Batson* itself shows that the race-neutral reasons for a strike may be placed in the record after the trial, because the Supreme Court remanded the case to the trial court for further proceedings to determine whether a prima facie case of discrimination had been established based on the prosecutor's use of peremptory strikes during the criminal trial and, if so, whether the prosecution could come forward with a neutral explanation for his actions at the trial. *See Batson*, 476 U.S. at 100. Thus, Petitioner's *Batson* claim is without merit.

b. Ineffective Assistance of Counsel Claims

Petitioner also raises in Ground One that his trial and appellate counsel were ineffective for failing to challenge the issue of the delay in requiring the prosecution to provide race-neutral reasons for the strikes.

"Ineffective assistance of counsel claims are governed by the standard set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *Green v. Nelson*, 595 F.3d 1245, 1249 (11th Cir. 2010). "An

14

ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 687). To establish deficiency, a petitioner must show that "counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688). Additionally, to establish prejudice, a petitioner must prove that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The above-stated *Strickland* standard also applies to ineffective assistance of appellate counsel claims. *See Smith v. Robbins*, 528 U.S. 259, 285, 287-88 (2000); *see also Temple v. Morton*, No. 06-15061, 2007 WL 2141823 (11th Cir. July 27, 2007) ("The Supreme Court has held that the *Strickland* analysis also applies to claims of ineffective assistance of appellate counsel.").

Petitioner raised this claim in his state habeas corpus petition, and the state habeas corpus court held the following:

Petitioner alleges ineffective assistance of appellate counsel for failure to raise on appeal the ineffective assistance of trial counsel for said counsel's failure to demand the State disclose on the record race-neutral

reasons for dismissing black jurors after the trial court found Petitioner failed to make out a prima facie case of purposeful discrimination. At the habeas hearing, when asked why he didn't demand the State disclose race neutral reasons, trial counsel testified "once Judge Grubbs informed me that I had not made a prima facie case, then my understanding was that was the end of the *Batson* challenge."

Petitioner claims trial counsel was ineffective when he failed to ask for the State's race neutral reasons after the court ruled no prima facie case of purposeful [discrimination]. This Court must determine whether that decision "was reasonable considering all of the circumstances." *Strickland*, *supra*. There is a "strong presumption" (which the Defendant must overcome) that counsel's conduct falls within the wide range of reasonable professional conduct and that all significant decisions were made in the exercise of reasonable professional judgment." *Id.* This Court is tasked with making "every effort . . . to eliminate distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time." *Id.*

In support of his position, Petitioner cites to two cases where the trial judge bypassed making a finding on the prima facie case and proceeded directly to receiving the race neutral causes asserted by the striking party. There is nothing in the opinions Petitioner cites indicating counsel's performance would have been deficient had he failed to request these reasons be put on the record after the court ruled no prima facie case had been made.

Although the Georgia Court of Appeals later concluded "LeMon made out a case of prima facie discrimination," at the time trial counsel made his *Batson* challenge, the trial court reached no such conclusion. *LeMon*, *supra*. Because of the trial court's finding, which failed to shift the burden of production to the State to give a race-neutral reason for the strike, trial counsel's failure to demand the State produce such reasons *anyway* was not unreasonable under the circumstances. *See Wolf v. State*, 273 Ga. 670 (2001).

The Court of Appeals already ruled the State provide[d] race neutral explanations for its use of peremptory strikes to remove three black jurors. *LeMon, supra.* In any event, Petitioner presents this Court with nothing to show prejudice to the outcome of the case by trial counsel's failure to demand those explanations be given as soon as the trial court ruled no prima facie case of purposeful discrimination.

Petitioner has not carried his burden of showing that trial counsel's actions "fell outside the wide range of reasonable professional assistance." *See Adams v. State*, 276 Ga. App. 319 (2005). Accordingly, appellate counsel's decision not to raise on appeal an ineffective assistance claim based on this inaction of trial counsel was not deficient performance. Petitioner fails to state a claim for habeas relief in Ground Two of his petition.

[Doc. 4, Resp. Attach. 12 at 3-5 (footnote omitted)].

Here, the state habeas corpus court correctly identified and applied the proper *Strickland* standard to Petitioner's *Batson* claims. Petitioner has identified no clearly established federal law that adds to *Batson* and requires race-neutral reasons to be placed on the record at the time of a *Batson* challenge. Petitioner has not shown that either his trial or appellate counsel's performance were deficient in failing to argue this issue at trial and on appeal, or that he was prejudiced by this failure. Accordingly, Petitioner has not shown how the state habeas corpus court's decision was contrary to or an unreasonable application of *Strickland* or that it was an unreasonable determination of the facts in light of the evidence presented in this case.

17

Thus, Petitioner is not entitled to federal habeas corpus relief on his ineffective assistance of counsel claims in Ground One.

2. Ground Two

In Ground Two, Petitioner argues that the trial court erred in failing to charge the jury on self-defense where Petitioner admitted possessing a weapon and threatened to use that weapon, and that the state habeas corpus court erred in ruling that counsel was not ineffective in failing to raise this issue at trial and on appeal. As stated above, federal habeas corpus relief is not available to correct any alleged errors in Petitioner's state habeas corpus proceedings. *See Quince*, 360 F.3d at 1261-1262.

With regard to Petitioner's underlying claims, Petitioner's appellate counsel raised as error on appeal the trial court's failure to *sua sponte* charge the jury on self-defense. The Georgia Court of Appeals considered the claim and held the following:

> LeMon asserts that the trial court erred when it failed to charge the jury on the affirmative defense of self-defense (or justification). Again, we disagree. It is true that "[w]here an affirmative defense is raised by the evidence, including a defendant's own statement, the trial court must present that defense to the jury as part of its charge, even absent a request and even absent a reservation of right to later object." [FN16]. The trial court was under no duty to give a charge on self-defense, however, when LeMon denied drawing his knife, the act supposedly undertaken in self-defense. [FN17]. There was no error.
>
> FN16. *Jones v. State*, 226 Ga. App. 619, 621(1), 487 S.E.2d 371

(1997) (citation omitted).

> FN17. *See Scott v. State*, 250 Ga. App. 870, 871(1), 553 S.E.2d 276 (2001) (trial court did not err in refusing to give requested charge on self-defense as affirmative defense to aggravated assault where defendant denied drawing a gun).

*LeMon*, 660 S.E.2d at 15.

"In general, questions of state law rarely raise issues of federal constitutional significance and, therefore, '[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.'" *Applewhite v. Sec'y, Dep't of Corr.*, 373 F. App'x 969, 971-72 (11th Cir. 2010) (quoting *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir.1983)); *see also Cabberiza v. Moore*, 217 F.3d 1329, 1333 (11th Cir. 2000) (stating that the writ of habeas corpus was not enacted to enforce state-created rights). "Where the claim is merely that a jury instruction was incorrect under state law, federal habeas relief is not available." *Applewhite*, 373 F. App'x at 972 (citing *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991)).

A federal habeas corpus court's limited role when faced with a challenge to a state law jury instruction is to determine whether any error or omission in the charge was so prejudicial as to amount to a violation of due process. *Agan v. Vaughn*, 119

F.3d 1538, 1545 (11th Cir. 1997). A petitioner's right to due process is not violated unless an erroneous instruction was so misleading as to render the entire trial fundamentally unfair. *Id.* at 1545 (citing *Estelle*, 502 U.S. at 72); *see also Applewhite*, 373 F. App'x at 972. Furthermore, the Court is obliged to consider the state court's entire instruction, not simply isolated parts. *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973).

Petitioner's claim involves a state court's interpretation of its own law. The decision of the Georgia Court of Appeals on Petitioner's claim is binding on this Court. *See Carrizales*, 699 F.2d at 1055 (Florida Supreme Court's determination that the trial court correctly refused to give a requested jury instruction under Florida law is binding on the federal habeas court). Petitioner has not established that the failure to give an instruction on self-defense rendered his entire trial fundamentally unfair. Petitioner has not pointed to any case law requiring a trial court to give a self-defense charge where the only evidence presented by the defense that a defendant committed an underlying criminal offense was a verbal statement saying that he was in possession of a weapon. Thus, Petitioner is not entitled to relief.

With regard to Petitioner's ineffective assistance of counsel claims related to the failure of the trial court to charge the jury on self defense, Petitioner raised the

20

claims in his state habeas corpus petition.  The state habeas corpus court held the

following:

> Petitioner alleges ineffective assistance of appellate counsel for failure
> to raise on appeal the ineffective assistance of trial counsel for said
> counsel's failure to properly present a theory of self-defense.  An
> affirmative defense such as self-defense admits, but seeks to justify, the
> commission of an act.  *Scott v. State*, 250 Ga. App. 870 (2001).
> Therefore, if a defendant denies having committed the act, the evidence
> does not authorize a jury charge on self-defense. *Heaton v. State*, 214
> Ga. App. 460 (1994).

> At the habeas hearing, trial counsel testified he did consider self-defense
> as a possible defense at trial, but recalled Petitioner "never admitted
> taking the knife out of [his] pocket."  At trial, Petitioner indeed testified
> he never pulled the knife out of his pocket.  Because Petitioner's
> testimony was inconsistent with the theory he displayed a knife in self-
> defense, trial counsel's decision not to request a self-defense charge was
> appropriate.  *Emerson v. State*, 222 Ga. App. 596 (1996).

> Appellate counsel raised as error on appeal the trial court's failure to
> *sua sponte* charge the jury on self-defense.  The Georgia Court of
> Appeals founds [sic] no error because "[t]he trial court was under no
> duty to give a charge on self-defense . . . [because] LeMon denied
> drawing his knife, the act supposedly undertaken in self-defense."
> *LeMon v. State*, 290 Ga. App. 527 (2008).

> Petitioner's habeas action alleges ineffective assistance of appellate
> counsel for failing to frame this allegation as an ineffective assistance
> of trial counsel claim.  As noted, "the defendant must admit the crime
> before he can raise the defense."  *London v. State*, 289 Ga. App. 17
> (2007).  Accordingly, even if trial counsel had requested a charge on
> self-defense, the trial court should have refused to give it absent
> Defendant's admission of the act.  *See Jones v. State*, 226 Ga. App. 619

(1997). Accordingly, appellate counsel's decision not to raise on appeal an ineffective assistance claim based on trial counsel's failure to request a charge on self-defense was not deficient performance. Petitioner fails to state a claim for habeas relief in Ground One of his petition.

[Doc. 4, Resp. Attach. 12 at 2-3 (citations to record omitted)].

Petitioner has not shown how the state habeas corpus court's decision was contrary to or an unreasonable application of *Strickland* or that it was an unreasonable determination of the facts in light of the evidence presented in this case. As held by the state habeas corpus court, trial counsel was not ineffective for failing to request the self-defense charge because Petitioner was not entitled to the charge. Thus, appellate counsel was not ineffective for failing to raise an ineffective assistance of trial counsel claim on appeal based on trial counsel's failure to request a self-defense charge. Accordingly, Petitioner is not entitled to federal habeas corpus relief on his ineffective assistance of counsel claims in Ground Two.

3. Ground Three

In Ground Three, Petitioner argues that the state habeas corpus court erred in finding that the rule of lenity did not apply where the factual circumstances in his case would fit both armed robbery and interfering with calls for emergency assistance, and that counsel was ineffective in failing to raise this issue at trial and on

22

appeal. As discussed previously, Petitioner cannot obtain federal habeas corpus relief on any alleged errors in his state habeas corpus proceedings. *See Quince*, 360 F.3d at 1261-1262. With regard to Petitioner's ineffective assistance of counsel claims in Ground Three, Petitioner raised these claims in his state habeas corpus petition, and the state habeas corpus court held the following:

> Petitioner alleges ineffective assistance of appellate counsel for the ineffective assistance of trial counsel for his failure to ask [that] Petitioner be punished for the misdemeanor offense of Interfering with Calls for Emergency Assistance according to the rule of lenity. Lenity applies "when a statute, or statutes, establishes, or establish, different punishments for the same offense, and provides that the ambiguity is resolved in favor of the defendant, who will then receive the lesser punishment." *Taylor v. State*, 2010 WL 2522147 (June 24, 2010), *citing Campbell v. State*, 297 Ga. App. 387 (2009). Lenity does not apply to statutes that unambiguously define different offenses. *Id.*
>
> Armed Robbery (O.C.G.A. § 16-8-41) and Interfering with Calls for Emergency Assistance (O.C.G.A. § 16-10-24.3) are two distinct and unambiguously defined offenses. Armed robbery requires the "intent to commit theft" whereas Interfering with Calls for Emergency Assistance requires the "intent to cause or allow physical harm or injury." O.C.G.A. §§ 16-8-41; 16-10-24.3. Interfering with Calls for Emergency Assistance does not require the taking of property of another whereas Armed Robbery does. *Id.* Last, Armed Robbery requires the use of an offensive weapon or article having the appearance thereof, whereas Interfering with Calls for Emergency Assistance does not. *Id.* The crimes are not the same, do not address the same criminal conduct, and create no ambiguity with respect to the appropriate punishment. *Taylor, supra.*

AO 72A
(Rev.8/82)

"[W]here a single act may as a factual matter be prosecuted under different penal statutes, the rule of lenity does not apply. Otherwise, one who murders with his hands may only be sentenced for simple battery." *Armstrong, supra*. (Citations omitted). A felony Armed Robbery conviction demands proof above and beyond that required for the misdemeanor offense of Interference with a Call for Emergency Assistance. The rule of lenity, therefore, does not apply to Petitioner's conviction. *Campbell, supra; Selfe v. State*, 290 Ga. App. 857 (2008).

Although Petitioner's conduct may have amounted to a violation of O.C.G.A. § 16-10-24.3, in that he verbally and physically obstructed the other men in the car from making a call for emergency assistance, his actions were much more in that he used a weapon to take the property of the victims. One victim testified Petitioner threatened him by saying "I have a knife in my hand, in my pocket, right now, and I'll use it . . . I'll stab you in the heart right now. I have a clear shot to your heart. I will stab you in the heart." That same victim testified at trial to having seen the knife, stating he "saw how sharp the blade was." This testimony was corroborated by the other victim, who testified Petitioner announced to the other men in the car "I can kill you right now."

The jury received evidence on all of the elements of Armed Robbery, namely, that Petitioner had the intent to commit theft of the victims' cell phones, that he actually took the victims' cell phones and that he used a knife to take them. Both victims testified they relinquished their cell phones upon threat by Petitioner. The testimony regarding these actions support a conviction for Armed Robbery.

Under circumstances of the case, trial counsel's decision not to request that Petitioner be punished for the misdemeanor offense of Interference with a Call for Emergency Assistance according to the rule of lenity was not so patently unreasonable that no competent attorney would have done the same. *Wilburn, supra*. Petitioner has not carried his burden of showing that trial counsel's actions "fell outside the wide range of reasonable professional assistance." *See Adams, supra*. Accordingly,

24

appellate counsel's decision not to raise on appeal an ineffective assistance claim based on this inaction of trial counsel was not deficient performance. Petitioner fails to state a claim for habeas relief in Ground Four of his petition.

[Doc. 4, Resp. Attach. 12 at 6-8 (citations to trial record omitted)].

Petitioner has not shown that the state habeas corpus court unreasonably applied *Strickland*, or that the court made an unreasonable determination of the facts in light of the evidence presented in his criminal case. Petitioner has not established that appellate counsel performed deficiently by failing to raise an ineffective assistance of trial counsel claim based on trial counsel's failure to ask the trial court that Petitioner be punished for the misdemeanor offense of interfering with calls for emergency assistance according to the rule of lenity. In addition, as held by the state habeas corpus court, the rule of lenity did not apply to Petitioner's case. *See United States v. Johnson*, 529 U.S. 53, 59 (2000) (holding that, absent ambiguity, the rule of lenity is not applicable to guide statutory interpretation in a criminal case). Therefore, Petitioner has not shown that trial counsel performed deficiently in failing to request that Petitioner be punished for the misdemeanor offense of interfering with calls for emergency assistance according to the rule of lenity instead of armed robbery. Furthermore, Petitioner has not shown that the outcome of his trial or

25

appeal would have been different had counsel raised this claim. Thus, Petitioner is not entitled to relief on his claims in Ground Three.

III. <u>Certificate of Appealability</u>

According to Rule 11 of the Rules Governing Section 2254 Proceedings for the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253(c)(2), a certificate of appealability shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." A prisoner satisfies this standard by demonstrating that reasonable jurists would find that the district court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Petitioner has failed to make a substantial showing of the denial of a constitutional right. The state court's findings on Petitioner's claims pass muster under § 2254(d) and the *Williams v. Taylor* analysis. Accordingly, **I RECOMMEND** that a certificate of appealability be **DENIED**.

AO 72A
(Rev.8/82)

IV.  Conclusion

Based on the foregoing, **I RECOMMEND** that Petitioner Jerome LeMon's

habeas corpus petition [Doc. 1] be **DENIED** and this action be **DISMISSED**.

**I FURTHER RECOMMEND** that a certificate of appealability be **DENIED**.

The Clerk is **DIRECTED** to terminate the referral to me.

**IT IS SO RECOMMENDED**, this 16th day of February, 2012.


GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)